**LION UNIFORM, INC., JANESVILLE APPAREL DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 87–6001.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1989.
Decided June 5, 1990.

Barbara Lee Willis, Miller and Chevalier, Leonard Bickwit, Jr., James P. Tuite, Emmett B. Lewis (argued), Patricia A. Millett, Anthony F. Shelley, Washington, D.C., for petitioner.

Aileen Armstrong, Deputy Associate Gen. Counsel, Eric Moskowitz, Abby P. Simms (argued), Corinna L. Metcalf, N.L.R.B., Washington, D.C., Martin M. Arlook, Regional Director, NLRB Region 10, Atlanta, Ga., for respondent.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Petitioner, Lion Uniform, Inc., Janesville Apparel Division, seeks attorney's fees from respondent, National Labor Relations Board, under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504, for legal expenses incurred in an underlying unfair labor practice case. This appeal presents the question of the appropriate standard of agency review to be accorded an Administrative Law Judge's decision on such an application for fees. Because we conclude that the Board appropriately applied a *de novo* standard of review and that substantial evidence supports the Board's determination, we affirm the denial of fees.

## I.

During the 1970s, Lion Uniform manufactured "fire coats" for firefighters at its Lake City, Tennessee plant. In May 1977, the Oil, Chemical & Atomic Workers International Union, AFL–CIO ("the Union") began to organize employees at the Lake City plant; ultimately, they voted to join the Union.

Prior to the July election, Lion Uniform interrogated employees about union activities and threatened to refuse to negotiate with the Union, to discharge employees, and to close the plant. Immediately following the election, the company unilaterally imposed changes in working conditions. The Board ultimately found that this conduct violated provisions of the National Labor Relations Act.

In October, employees struck the Lake City plant to protest the changes in working conditions. During the strike, Lion

Uniform moved the fire coat production line to a larger facility it had previously purchased in Beattyville, Kentucky. On October 23, the company sent a telegram to the Union indicating the relocation was temporary and was due to the work stoppage. However, a telegram sent the next day said the transfer was occurring because of an increase in business and the lack of room to expand in Lake City.

In November, the Union filed a complaint with the Board alleging that the relocation was an unfair labor practice. Following investigation of the complaint, the General Counsel of the Board, in February 1978, filed a complaint against Lion Uniform charging that the relocation of the fire coat production line violated 29 U.S.C. § 158(a)(3). It is the General Counsel's filing and subsequent handling of this unfair labor practice complaint that is the focus of the company's application for attorney's fees under the EAJA.

*Settlement Offers and Disposition on the Merits*

In March 1978, Lion Uniform offered to settle the charges brought by the General Counsel by admitting the allegations of the complaint and rehiring all of the striking employees if the remedy chosen by the Board would allow the company to reopen the Lake City plant to make knit shirts rather than fire coats. Both the Union and the General Counsel opposed the proposal, demanding that the fire coat line be returned to Lake City. Following a hearing, an A.L.J. concluded that the work of making knit shirts would be substantially equivalent to making fire coats and the offer should be accepted.

The Board overturned the A.L.J.'s decision to accept the settlement, ruling that the knit shirt work was not substantially equivalent, and remanded the case for a hearing on the merits of the complaint.

Lion Uniform proposed a different settlement in June 1980, but the General Counsel refused to accept it. In August, the company offered to pay moving expenses of any employee who wished to work at the Beattyville facility, but the General Counsel also refused this offer.

At the hearing before the A.L.J. on the merits, the company introduced evidence that the Beattyville facility had been purchased pursuant to a management plan initiated several years earlier. That plan called for Lion Uniform to move the fire coat line to the larger Beattyville facility at some point in the future. The company also introduced evidence that it had fallen behind in its production schedule to the point that customers were complaining about delays in receiving their orders, and that, as time passed, it became much more economically efficient to leave the fire coat line in Beattyville.

In February 1981, the A.L.J. issued his decision finding that, although Lion Uniform had committed numerous violations of the NLRA, it had not committed an unfair labor practice when it moved the fire coat line.

*Application for Fees under the EAJA*

Having prevailed on the merits, Lion Uniform sought attorney's fees under the EAJA. The A.L.J. responded by concluding that the General Counsel's position was not "substantially justified" at any stage of the litigation. He found that the General Counsel's office was not justified in filing the complaint because it had no evidence that the relocation was caused by anything other than the economic problems brought on by the strike, and that the General Counsel acted unreasonably in rejecting the settlement offers.

The Board reversed the A.L.J.'s award of attorney's fees. Applying a *de novo* standard of review, it concluded that the General Counsel was substantially justified at each stage of the administrative proceedings.

Lion Uniform now asks this court to overturn the Board's decision, contending that the Board applied the improper standard of review in overturning the A.L.J.'s award, and that the Board erred in concluding that the positions taken by the General Counsel were substantially justified.

## II.

The Equal Access to Justice Act permits parties prevailing over the United

States to recover attorney's fees and related expenses if the government's position was not substantially justified. The Act contains provisions authorizing fee awards in specified civil judicial actions, 28 U.S.C. § 2412, and in adversary administrative proceedings, 5 U.S.C. § 504.

5 U.S.C. § 504(a)(1) provides that

[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency·finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

■■■■ While the decision on an application for fees is initially made by the adjudicative officer, the final administrative decision is that of the agency. 5 U.S.C. § 504(a)(3). A nongovernmental party dissatisfied with the agency's decision may appeal to the federal court having jurisdiction to review the merits of the underlying dispute. That court may modify the agency's determination only if the agency's failure to award fees was unsupported by substantial evidence. 5 U.S.C. § 504(c)(2).

■■■■ But, while the EAJA sets out the substantial evidence standard of review for courts reviewing final agency decisions, the Act is silent on the appropriate standard of review to be accorded an A.L.J.'s decision in the course of an internal agency review. According to Lion Uniform, the Board erred in conducting a *de novo* review of the A.L.J.'s determination that the General Counsel's position in the underlying proceeding on the merits was not substantially justified. The proper standard of review, says the company, is whether the A.L.J.'s decision to award fees amounted to an abuse of discretion.

In support of its position, Lion Uniform relies upon the opinion of the United States Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In *Pierce,* the Court was called upon to determine the correct standard of review to be applied by a court of appeals when reviewing a district court's determination that a federal agency's position was not substantially justified. Upon considering the provision of the EAJA authorizing fee awards in civil judicial proceedings, 28 U.S.C. § 2412(d)(1)(A), the Court noted that, for purposes of standards of review, "decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." 108 S.Ct. at 2546. It concluded that a deferential abuse of discretion, rather than a *de novo* standard, is to be applied when a court of appeals reviews a district court's determination that the government's position was not substantially justified.

The Supreme Court first noted that the statute provides that "attorney's fees shall be awarded 'unless *the court finds* that the position of the United States was substantially justified,' ... as opposed to simply 'unless the position of the United States was substantially justified,'" and that such a formulation "emphasizes the fact that the determination is for the district court to make, and thus suggests some deference to the district court upon appeal." *Id.* at 2547 (citation omitted). The Court also was of the opinion that a district court is in a superior position to determine if the government's position is substantially justified because it "may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon, or whether critical facts could easily have been verified by the Government." *Id.*

Lion Uniform recognizes that *Pierce* does not directly apply to this case, as the Supreme Court there concerned itself with application of the provision of the EAJA dealing with fee awards to prevailing parties in civil actions, as opposed to those who prevail in adversary administrative adjudications. It argues, however, that the reasoning of *Pierce* applies, since the language in the civil actions statute parallels the language in the administrative provision, that fees must be awarded "unless

*the adjudicative officer of the agency finds* that the position of the agency was substantially justified." 5 U.S.C. § 504(a)(1) (emphasis added).

The Board urges us to adopt the position of the Administrative Conference of the United States. After the EAJA was originally enacted, the Administrative Conference drafted a set of model rules to assist agencies in formulating their own rules for implementation of the Act. The Conference initially proposed an abuse of discretion standard of review, *see* Notice, Implementation of the EAJA, 46 Fed.Reg. 15,-895, 15,900–01 (Mar. 10, 1981), but, after comment from several agencies, revised its model rule stating:

> [W]e agree with those agencies that believe the standard of review in 5 U.S.C. 557 [*de novo* review] applies to decisions on applications for attorney fees, and the final model rule (§ 0.308) does not include a special standard of review.... [W]e believe Congress mentioned the adjudicative officer in order to ensure that the initial ruling on an application would be made by someone with direct knowledge of the underlying proceeding. If Congress meant to depart so substantially from customary agency practice in adjudications under the Administrative Procedure Act, we believe it would have done so explicitly.

Notice, EAJA: Agency Implementation, 46 Fed.Reg. 32,900, 32,910 (June 25, 1981) (regulation codified at 1 C.F.R. § 315.308 (1989)).

The Board has the better side of the argument. The relationship between a court of appeals and a district court differs substantially from the one existing between an A.L.J. and the Board. Unlike an appellate court, the Board's normal function requires it to examine the complete record of a proceeding and make *de novo* findings of fact. *See* Administrative Procedures Act, 5 U.S.C. § 557 (providing for *de novo* review of agency adjudications).

In addition, judicial review of the agency's final decision on fees is more easily reconciled with a *de novo* review by the agency of the A.L.J.'s determination, since

courts apply a substantial evidence standard of review in appeals from an agency's final decision. Because the decision the court reviews is the product of a *de novo* review, it makes sense to look to that decision as the basis of deciding whether the agency's determination that its position was substantially justified is supported by substantial evidence.

Were an agency permitted to overturn an A.L.J.'s determination only if it found that the A.L.J. abused his discretion, it is not clear how a court could sensibly apply its statutory standard of review. For example, in this appeal, if we were to apply our standard of review to the A.L.J.'s finding, in order to determine whether the A.L.J.'s decision to award fees was supported by substantial evidence, then the Board's abuse of discretion review would be more deferential than this court's substantial evidence inquiry. On the other hand, were we to apply the standard of review to the final decision of the Board, we would be directing our attention to whether substantial evidence supports the Board's decision that the A.L.J. abused his discretion in determining that the government's position was substantially justified. It is unlikely that Congress intended such a convoluted scheme for reviewing fee determinations.

The rationale of the opinion in *Pierce* is, of course, sound in the context of the relationship between a court of appeals and a district court, where the EAJA litigation begins in the district court. But, where the EAJA litigation begins before an agency, with appeals contemplated to the courts, a highly deferential review by the Board, followed by a less deferential review by the courts, makes little sense. In the absence of more specific legislative direction, we must assume that the more logical scheme applies—that the standard of deference is heightened as the appeal process progresses—*de novo* review at the agency level, and substantial evidence review before the courts.

### III.

In *Pierce*, the Supreme Court pointed out that the "substantially justified"

standard is essentially one of reasonableness. 108 S.Ct. at 2549–51. The government's litigating position will be "substantially justified" if it has a "reasonable basis both in law and fact" or is "justified to a degree that could satisfy a reasonable person." *Id.* at 2550.

The Board found that the General Counsel was substantially justified in filing the complaint given the information he had at the time. According to the company, however, the filing was not substantially justified since, had the General Counsel's office adequately investigated the Union's complaint, it would have learned that the relocation was motivated solely by business reasons. Lion Uniform particularly faults the General Counsel for failing to interview company officials and review financial records, citing a number of cases for the proposition that the General Counsel has a duty to investigate before filing a complaint. *See, e.g., Leeward Auto Wreckers, Inc. v. NLRB,* 841 F.2d 1143, 1147–48 (D.C. Cir.1988).

In *Leeward Auto Wreckers,* the court of appeals recognized that, while the General Counsel has a duty to investigate, the filing of a complaint and proceeding to a hearing in that case was substantially justified since the General Counsel requested a response from the company to the union's charges and the company failed to put forward any proof to back up its oral representations. *Id.* at 1148.

Here, Lion Uniform failed to provide the General Counsel with any written evidence concerning the company's ultimately successful defenses until the hearing on the merits. The company made pre-election threats to close the Lake City plant and, two weeks after employees went on strike, sent a telegram to the Union indicating that the production line was being relocated because of the work stoppage. It then sent a second telegram saying the relocation was due to the increase in business, coupled with the lack of room to expand in Lake City. When the Union filed an unfair labor practice charge and an investigator from the General Counsel's office asked the company to explain its relocation deci-

sion, it directed the investigator to its previous telegrams and assured him that the transfer was only temporary. Shortly thereafter, it notified the Union the move was to be made permanent.

Even when it decided to make the relocation permanent, the company failed to provide the General Counsel with evidence of the plan developed several years earlier to permanently transfer its production to Beattyville. A month later, in February 1978, the General Counsel's complaint was filed. Not until the hearing on the merits in the fall of 1980 did Lion Uniform produce written evidence of its business reasons for the relocation of production. In view of all these circumstances, the General Counsel certainly had a reasonable basis in fact to believe that the relocation was improperly motivated. Accordingly, substantial evidence supported the Board's decision that the General Counsel was substantially justified in filing the complaint.

Lion Uniform also contends that the General Counsel was not substantially justified in refusing its settlement offers. Because all three offers were made before the company presented its evidence of business reasons for relocating the plant, the General Counsel was warranted in believing the case against the company was stronger than was actually the fact. This amounts to substantial evidence to support the Board's decision that the General Counsel was substantially justified in refusing these offers.

### IV.

For the foregoing reasons, the Board's order denying attorney's fees and other expenses under 5 U.S.C. § 504 is affirmed.