**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MICHIGAN CONFERENCE OF TEAMSTERS WELFARE FUND; Local 243, International Brotherhood of Teamsters, AFL–CIO, Respondents.**

No. 92–6458.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 1, 1993.

Decided Dec. 7, 1993.

David Seid (argued & briefed), N.L.R.B., Office of the General Counsel, Aileen A. Armstrong, Deputy Asso. Gen. Counsel, Paul J. Spielberg (briefed), National Labor Relations Board Washington, DC, William C. Schaub, Jr., Acting Director, N.L.R.B., Detroit, MI, for petitioner.

Kurt Kobelt, Gerry M. Miller (argued & briefed), Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Francis J. Kortsch (argued & briefed), Milwaukee, WI, for respondents.

Before: KEITH, NELSON, and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Petitioner National Labor Relations Board seeks enforcement of its order finding that the respondents, Michigan Conference of Teamsters Welfare Fund and Teamsters Local 243, violated federal labor law by requiring the Fund's nonsupervisory salaried employees to become members of Teamsters Local 243, as a condition of employment. The Board's petition presents two main issues: first, whether the Fund violated sections 8(a)(1), (2), and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a), by requiring its employees to join respondent Local 243, or whether the membership requirement was a business necessity; and second, whether respondent Local 243 violated sections 8(b)(1)(A) and (2) of the Act by collaborating in the Fund's imposition of the membership requirement, and by accepting the employees' dues? In addition, Local 243 seeks reimbursement of fees and costs incurred in responding to the Board's petition,

claiming that the Board was not justified in seeking enforcement against the union.

We conclude that the Fund has not established a business necessity for its membership requirement, and therefore has violated federal labor law. We also conclude that Local 243 committed corresponding violations. Finally, we believe that, under controlling law, the Board had substantial justification to proceed against Local 243. Accordingly, the union is not entitled to its attorney's fees expended in responding to this enforcement action.

## I.

The Michigan Conference of Teamsters Welfare Fund is a trust, whose purpose is to provide health and welfare benefits to some 26,000 employees represented by the 22 union affiliates of the Michigan Teamsters Joint Council No. 43. The trust was established in 1948, pursuant to a trust agreement and in conformity with 29 U.S.C. § 186(c)(5).[1] Contributions from the Motor Carrier Employers Association of Michigan and the Michigan Cartagemen's Association finance the Fund, and trustees selected by these two employer associations and by the Joint Council, administer the Fund.

The Fund employs approximately 90 nonsupervisory employees, all of whom work in the Teamsters headquarters complex in Detroit. The Office & Professional Employees International Union, Local 10, represents the Fund's 67 hourly workers for collective bargaining purposes. The Fund's 23 nonsupervisory salaried employees, who include data processors, confidential secretaries, field representatives, and maintenance employees, are not represented for collective bargaining or grievance purposes. However, since at least May 1989, the Fund has required that these salaried workers be dues-paying members of Local 243. Specifically, each employee is required to sign the following form, or one similarly worded:

> The Michigan Conference of Teamsters Welfare Fund, as a condition of employment, requires each of its salaried employees to belong to Teamsters Local Union

No. 243. Local 243, however, cannot represent you for bargaining or grievance purposes. This does not preclude you from exercising your rights as are provided under Section 7 of the National Labor Relations Act.

**YOU ARE AN AT–WILL EMPLOYEE, WHICH MEANS YOU CAN BE DISCHARGED AT ANY TIME FOR ANY REASON.**

The Fund deducts the dues owed by these employees, and transmits the collected sums to Local 243.

A salaried employee objected to the Local 243 membership requirement by filing unfair labor practice claims with the Board. In the proceedings that followed, the Fund's sole witness, Executive Director Gerald Wiedyk, justified the challenged policy as essential to the Fund's existence:

> If we were to have non union employees, I don't think any of our local unions and the local unions and the Joint Council have told me this many, many times over the years and when I first got there they would not have members negotiated in our Fund.

Wiedyk described the Fund field representatives' job duties as, *inter alia,* dealing with the union membership as well as with benefits providers. Wiedyk testified in some detail as to his own experience in assisting with union negotiations, and implied that field representatives also may be called on to help with negotiations. As for the other salaried employees, Wiedyk testified that membership in Local 243 is necessary "[s]o that they have an understanding in what we are all about." The administrative law judge found this testimony to be "vague, conclusionary and hardly reliable."

The ALJ found no meaningful nexus between the Fund's business needs and its union membership requirement. For example, the ALJ found it far more likely that it was Wiedyk and the Fund trustees, rather than any of the salaried employees at issue, who had responsibility for union negotiations. Additionally, the ALJ rejected case law that recognized that, for some union-employers,

**1.** Formerly 29 U.S.C. § 302(c)(5).

mandatory union membership may be a business necessity, finding that the Fund was not a union-employer. Finally, the ALJ determined that, even if the Fund could be characterized as a union-employer, it had not provided its salaried employees with adequate notice of their rights, under Section 7, to choose another labor organization as their collective bargaining representative.

Accordingly, the ALJ found that the Fund had violated sections 8(a)(1), (2); and (3) of the Act by requiring its nonsupervisory salaried employees to become dues-paying members of Local 243, by deducting union dues from the employees' wages, and by remitting the dues to Local 243. In addition, the ALJ found that Local 243 had violated sections 8(b)(1)(A) and (2) of the Act, by being a party to the Fund's unlawful activity and by accepting dues from the Fund's salaried employees. The ALJ held Local 243 primarily liable, and the Fund secondarily liable, for reimbursing all unlawfully procured dues, with interest. In addition, both respondents were to post notices of violation.

On January 31, 1992, a three-member panel of the Board adopted the ALJ's findings in all relevant respects. Following the Board's decision, the Fund ceased deducting, and the union ceased accepting, dues from the wages of the nonsupervisory salaried employees. Both respondents made efforts to identify those employees entitled to reimbursement, but neither the Fund nor Local 243 could reach agreement with the Board as to which employees had to be reimbursed. On April 13, 1992, Local 243 posted the ordered notice, signed by Francis Kortsch, a private attorney who represents Local 243. Several months later, a Board representative notified Kortsch that Board policy required that the notice be signed by a union official rather than by Kortsch, and that Local 243 would not be in compliance until a new notice was posted. Shortly thereafter, the Board advised Kortsch that the Board planned to seek enforcement against the union if Local 243 did not re-post the notice. On November 20, 1992, the Board moved for enforcement of its order against both the Fund and Local 243.

## II.

This court may not disturb the Board's findings of fact, if "on the record as a whole there is substantial evidence to support [the Board's] findings." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Evidence is substantial when "it is adequate, in a reasonable mind, to uphold the decision." *Turnbull Cone Baking Co. v. NLRB,* 778 F.2d 292, 295 (6th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986). Similarly, this court should accept the Board's construction of the National Labor Relations Act, provided it is "reasonably defensible [even if] the court[ ] might prefer another view of the statute." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). "As the Board is charged with enforcing the Act, courts must accord deference to the Board's interpretation of the Act...." *General Truck Drivers, Local No. 957 v. NLRB,* 934 F.2d 732, 735 (6th Cir.1991). However, the court may refuse to enforce the Board's order if the order has " 'no reasonable basis in law.' " *Ford Motor Co.,* 441 U.S. at 497, 99 S.Ct. at 1849.

### A.

The Board maintains that the Fund, as an employer, interfered with its employees' Section 7 rights and provided unlawful support to Local 243, by requiring the Fund's nonsupervisory salaried employees to join a union that had not been selected by a majority of the employees. The Fund, on the other hand, compares itself to a union-employer and claims entitlement to the business necessity defense recognized in the case of some union-employers. It argues that union membership can be a *bona fide* occupational qualification, provided (1) business necessity justifies the membership requirement, and (2) the Fund informs its employees that their Section 7 rights remain unimpaired by the membership requirement.

In this regard, the Fund argues that Wiedyk, the sole witness at the Board's hearing, established that the membership requirement was necessary to the Fund's survival. The Fund claims that because there was no

contradictory testimony, the ALJ was required to credit Wiedyk's testimony. As to the notification prong of the business necessity defense, the Fund maintains that the form it required all salaried employees to sign adequately apprised employees of their Section 7 rights.

■ Section 8(a)(1) of the Act prohibits an employer from, "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the[ir Section 7] rights" to choose their own bargaining representative, or to choose to refrain from concerted activity.[2] 29 U.S.C. § 158(a)(1). Section 8(a)(2) of the Act prohibits an employer from, *inter alia*, providing "financial or other support" to any labor organization. 29 U.S.C. § 158(a)(2). As a general rule, an employer violates both of these provisions when it conditions employment on membership in a union never designated by a majority of employees as their chosen representative. *See International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 736–37, 81 S.Ct. 1603, 1607, 6 L.Ed.2d 762 (1961); *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 413–14, 80 S.Ct. 822, 824, 4 L.Ed.2d 832 (1960).

This court addressed the above standard several years ago, enforcing the Board's position that an employer had violated sections 8(a)(1) and (2) by requiring employees in a new facility to join the union recognized by the employer at other plants, when a majority of the new plant's employees had chosen another union. *Allied Indus. Workers of Am., Local 620 v. NLRB*, 375 F.2d 707, 711 (6th Cir.1967). The employer's recognition of a union that lacks majority support, "impair[s] the employees' rights guaranteed by §§ 7 and 9(a) of the Act to freely choose their own bargaining representatives, or to choose not to be represented at all." *Randall Div. of Textron, Inc. v. NLRB*, 965 F.2d 141, 144–45 (7th Cir.1992).

**2.** Section 7 rights explicitly include "the right to ... form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and ... the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization [selected by a major-

■ In addition to violating the above provisions, an employer also violates section 8(a)(3) when it requires employees to join a union that has not been selected by a majority of its employees, *id.* at 144, or when it withholds union dues pursuant to an invalid union contract, *NLRB v. Hudson River Aggregates, Inc.*, 639 F.2d 865, 868–72 (2d Cir.1981). The imposition of such conditions of employment constitutes prohibited "discrimination ... to encourage ... membership in a[ ] labor organization." 29 U.S.C. § 158(a)(3).

Against this background, the Board once before considered facts almost identical to those present here. In *Teamsters Health & Welfare Fund I*, 233 N.L.R.B. 814 (1977), the employer was a trust fund that had required its employees to become members of a Teamsters local, even though the local "had not been lawfully recognized as the collective-bargaining representative of the employees and there was no collective-bargaining agreement covering such employees." *Id.* at 815. As the Board held:

> It is patently clear ... that [the fund] violated Section 8(a)(1), (2), and .(3) of the Act by requiring membership in Local 100 as a condition of employment in the absence of a valid union-security agreement, and by deducting dues and other fees from [the employees'] wages on behalf of Local 100.

*Id.* at 818.

■ The Fund argues that *Teamsters Fund I* is not controlling, because the Fund, as the equivalent of a union-employer, is entitled to rely on a business necessity defense.[3] This defense was recognized by the Board, in the case of a union-employer, in *Retail Store Employees Union, Local 428*, 163 N.L.R.B. 431 (1967). As the Board observed in *Retail Store Employees Union*,

ity of employees] as a condition of employment...." 29 U.S.C. § 157.

**3.** The Fund also attempts to distinguish *Teamsters Fund I* by arguing that the union in that case claimed to be the bargaining representative for fund employees. The facts given in the case do not support this interpretation.

however, the defense has limited application. Even in the case of union-employers, the defense is not available *per se.* Rather, a union-employer may require union membership as a condition of employment only if it shows that membership impacts job performance *and* if it affirmatively notifies employees that the requisite membership does not impact their right to choose another union to bargain on their behalf. *Id.* at 432–33.

■ In order to satisfy the first prong of the defense, the union-employer must demonstrate that the membership requirement is "reasonably related to the proper performance of [the employees'] jobs." *Id.* at 432. In *Retail Store Employees Union,* for example, the Board found that union membership could be imposed on the union's field representatives, because these employees,

> in conducting the [union's] business, might be asked to explain how the [union] functions as a collective-bargaining representative, or why it is desirable for workers to organize. It is clearly proper for the [union] to be concerned about not hiring employees who do not adequately understand or agree with the [union's] general goals ... and ways of achieving its goals to the extent such understanding is necessary for the performance of their duties.

*Id.* at 433. Accordingly, the union could impose union membership on those employees who were responsible for explaining to others the benefits and intricacies of union membership. Conversely, the Board elsewhere has stated that a union-employer's imposition of a membership requirement without proof of job-relatedness probably "would be an 8(a)(2) violation no matter what the employees are told." *Teamsters Local Union No. 688,* 215 N.L.R.B. 852, 855 (1974).

Almost as an aside, the Fund argues that there is not sufficient evidence in the record to support the Board's finding that union membership was not reasonably related to the jobs at issue. The Fund claims that the ALJ could not refuse to credit Wiedyk's testimony that union membership was job-related, because there was no contradictory evidence on the point. The Fund cites the "well-established rule that it is the Board's function to resolve questions of fact and cred-

ibility when there is a conflict in the testimony." *NLRB v. Baja's Place,* 733 F.2d 416, 421 (6th Cir.1984). However, this court has found that an ALJ's decision to discount a witness' testimony can rest solely on such considerations as the witness' affect or manner, rather than on the existence of contradictory testimony. *NLRB v. Magnetics Int'l, Inc.,* 699 F.2d 806, 813 (6th Cir.1983). In addition, the Board's factual findings can be based on its " 'informed judgment on matters within its special competence,' " as well as on witness testimony. *Turnbull Cone Baking Co.,* 778 F.2d at 295 (quoting *Universal Camera Corp.,* 340 U.S. at 490, 71 S.Ct. at 465–66). Accordingly, the Fund's claim is without merit.

The union-employer that satisfactorily demonstrates the job-relatedness of the membership requirement, still may not impose union membership on its employees in violation of their Section 7 rights to choose their own bargaining representative. The union employer must prove that it has "affirmatively advise[d] its employees of their right to engage in concerted activities unaffected by these membership requirements." *Retail Store Employees Union,* 163 N.L.R.B. at 433. Specifically, the union-employer:

> must state positively [ (1) ] that its requirements of membership ... are imposed only as a necessary part of the employee's job; [ (2) ] that the union-employer does not propose to represent its employee-members for the purposes of collective bargaining or the adjustment of grievances; [ (3) ] that its employees are free to join another labor organization in order to exercise their statutory rights; and [ (4) ] that where a majority of its employees do choose such other labor organization the union-employer will bargain with it, upon request.

*Id.* The Fund agrees that notification is required. It argues, however, that a less detailed notice is adequate when employees are sophisticated in labor matters.

■ The Fund's position that it has established the business necessity defense is unconvincing. Most of the Fund's evidence focused on union membership in all salaried

positions as requisite to maintaining the Fund's relationship with the local unions it serviced. This is not the nexus to specific jobs recognized by the Board in its previous decisions.

Here, there was no testimony regarding the job duties of the Fund's data processors, confidential secretaries, or maintenance employees, and little testimony about the job responsibilities of field representatives. Wiedyk, the only witness to testify, performed none of the jobs in question. The ALJ specifically found that what little testimony there was regarding job-relatedness, "was vague, conclusionary and hardly reliable." Only the ALJ had the opportunity to " 'observe[ ] the demeanor of the witness[ ].' " *Baja's Place,* 733 F.2d at 421 (citation omitted). Accordingly, there is substantial evidence to support the Board's determination that the Fund failed to establish the necessary relationship between the membership requirement and the employees' job performance.

■ Finally, there can be no argument that the Fund satisfied the rigid notification requirements of *Retail Store Employees Union.* The Fund admits that it had no procedure for informing its salaried employees of their right to join another union, and of its willingness to negotiate with such union. However, it claims that the reference to "Section 7 rights" on the form signed by its employees provided these employees with adequate notice, because the affected employees were sophisticated in the meaning of Section 7 rights.

Such a loose reading of the employer's duty to provide notice is inconsistent with the detailed notice requirements set forth in *Retail Store Employees Union.* Nowhere in that case did the Board suggest application of a subjective standard. On the contrary, it found that *union* employees, including *union* field representatives whose job it was to inform others of their Section 7 rights, had to receive the explicit notice outlined in the Board's opinion. 163 N.L.R.B. at 433. Nothing in the record suggests that this court should accept less-precise notice in the case of data processors, secretaries, and health benefits representatives who are em-

ployed, not by a union, but by an entity that merely likens itself to a union.

■ As to the proposition that the Fund is a "union-like" employer, the Fund claims that Board law treats union welfare funds and local unions alike. Its authorities are unconvincing. For example, *Teamsters Fund I,* 233 N.L.R.B. 814, relied on by the Fund, merely states that the fund in that case agreed that it met the Act's definition of "employer," a definition that applies to *all* private employers covered by the Act. 29 U.S.C. § 152(2). Similarly, the Fund cites ambiguous language in a second case as establishing the Board's position that funds and local unions share some "common bond." *Oregon Teamsters' Sec. Plan Office,* 119 N.L.R.B. 207, 211 (1957). Even if a common bond were sufficient to support the Fund's position, the specific language, "the common bond that Local 223 *and such other Respondents* have with the Teamsters organization," *id.* (emphasis added), more likely refers to the other three local unions named as respondents in the case than to the fund.

In contrast, the ALJ specifically found that the Fund was not akin to a union-employer, nor was it like any other employer, because of its unique status as a trust. As the Supreme Court has held, a union welfare trustee can owe no allegiance to either the union organization or employer association that appointed him. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981). Rather, the trust's undivided loyalty must be to the plan beneficiaries, the union members, and their spouses and dependant children. *Id.*

We conclude that the Board correctly determined that the Fund had violated sections 8(a)(1), (2), and (3) by requiring its nonsupervisory salaried employees to join Local 243 and by deducting union dues on behalf of Local 243. The Board's order is supported by the plain language of sections 8(a)(1) and (2), which prohibits an employer's interference with employee rights to self-organize, as well as an employer's provision of "financial or other support" to a union. In addition, conditioning an individual's employment on her agreement to join a union that does not

represent her or her coworkers clearly discriminates in favor of "membership in a[ ] labor organization," in violation of section 8(a)(3). Far more compelling than the Fund's argument that it is a union-like employer is the Board's position that the Fund's special duties as a trust preclude any such categorization. The Board's interpretation of the law finds support in prior decisions of this and other federal courts. Moreover, the Board's ruling is entirely consistent with prior Board law. Accordingly, it cannot be said that the Board's order has " 'no reasonable basis in law.' " *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849.

### B.

■ The Board next argues that Local 243 committed an unfair labor practice by being a party to the Fund's unlawful activity, and by accepting the employees' dues with the knowledge there was no valid bargaining relationship. Under section 8(b)(1)(A), a union, like an employer, is prohibited from interfering with employees' Section 7 rights. 29 U.S.C. § 158(b)(1)(A). Similarly, section 8(b)(2) prohibits a union from assisting in employer discrimination designed "to encourage ... membership in a[ ] labor organization." 29 U.S.C. §§ 158(a)(3) and (b)(2).

In *United Mine Workers of America, Dist. 30 v. NLRB*, 819 F.2d 651 (6th Cir.1987), this court held that a union clearly violated both of the above prohibitions by contracting with an employer, knowing that the union did not enjoy the support of a majority of the employer's workers. *Id.* at 655. The union assisted the employer in the employer's discriminatory action of conditioning employment on union membership. *Id.*

The language of the statutory prohibitions and the court's interpretation of these restrictions support the Board's ruling. The respondents offer no contrary authority. Rather, they base their position entirely on the supposition that the Fund's membership requirement is lawful. They are mistaken. Accordingly, the Board's construction of the statute is reasonably defensible.

### III.

■ Finally, Local 243 argues that it has complied, to the extent possible, with the Board's order. The union claims that it turned over the dues records necessary to determine reimbursement entitlement, and has agreed to refund the dues once the Board finalizes the calculations. In addition, Local 243 states that it complied with the posting requirement, and that the Board's position to the contrary is a departure from Board guidelines and past practices. Therefore, the union claims, the Board abused its power in moving for enforcement against Local 243, and the union is entitled to attorney's fees.

Local 243 claims a right to attorney's fees under the Equal Access to Justice Act. The appropriate statutory authority for Local 243's claim is found at 28 U.S.C. § 2412(d)(1)(A), which provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* As this court previously has held, the government's position is " 'substantially justified' if it has a 'reasonable basis both in law and fact' or is 'justified to a degree that could satisfy a reasonable person.' " *Lion Uniform, Inc. v. NLRB*, 905 F.2d 120, 125 (6th Cir.), *cert. denied*, 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)).

The Supreme Court has held that the Board is justified in seeking enforcement even when a respondent employer or union has fully complied with the Board's order. *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950). In large part, this rule derives from the Board's interest in having " 'an existing court decree to serve as a basis for contempt

proceedings,' in the event a renewal of the unfair practice occurs after the enforcement order." *Id.* at 569, 70 S.Ct. at 830 (citation omitted). Moreover, when there has not been compliance with a Board order for reimbursement, the respondent's statement that it intends to reimburse the employee does not moot the propriety of enforcement. *NLRB v. Heck's, Inc.*, 369 F.2d 370, 371 (6th Cir.1966). We agree, however, that Local 243 has complied with the Board's posting requirement and need not do so again.

While Local 243 rightfully may believe the Board's petition was over-zealous, the reality is that no dues have been reimbursed, and the parties have yet to agree on which employees are entitled to reimbursement. There is evidence that Local 243 is at least partly at fault for the nonexistence of a reimbursement agreement. However, even if the union is without blame, given the rule of *Mexia Textile*, we cannot say that the Board acted without substantial justification in seeking enforcement. Accordingly, Local 243 is not entitled to an award of fees.

### IV.

The Board's petition for enforcement against both respondents is **GRANTED.**