**HOVEY ELECTRIC, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 00–1128.

United States Court of Appeals, Sixth Circuit.

Nov. 2, 2001.

**510**

Before KENNEDY, GUY, and BOGGS, Circuit Judges.

KENNEDY, Circuit Judge.

Petitioner Hovey Electric, Inc., together with the Christian Labor Association ("CLA"), were charged with unfair labor practices, in violation of the National Labor Relations Act, 29 U.S.C. 151 *et seq.* ("NLRA"). Hovey and the CLA successfully defended against the charges at a hearing before an Administrative Law Judge ("ALJ"). The General Counsel to the National Labor Relations Board ("NLRB" or "Board") filed exceptions to the ALJ's decision, but the NLRB ultimately adopted the ALJ's decision. Hovey and the CLA then sought to recover attorneys' fees and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA"). The trial ALJ recommended dismissal of their fee applications, and Hovey and the CLA filed exceptions to that decision. The NLRB adopted a majority of the findings of the ALJ and affirmed the dismissal of the applications. Pursuant to 29 U.S.C. § 160(f), Hovey now petitions this court for review of the NLRB's decision to dismiss the fee applications.[1] For the reasons set forth below, we affirm the order of the NLRB.

## I.

Hovey Electric, an electrical construction company, successfully defended against an unfair labor practices charge concerning Hovey's relationship with the CLA. The facts of the underlying unfair labor practices dispute are as follows: In February of 1997, James Hovey, the owner and manager of Hovey Electric, contacted Michael Koppenol, the National Representative of the CLA, regarding the possibility of entering into a collective bargaining agreement with the CLA. On August 13, 1997, Hovey and the CLA executed a collective bargaining agreement, although CLA did not have the support of a majority of Hovey employees at the time. Section 9(a) of the NLRA requires that a union be selected by a majority of the employees in a bargaining unit before the union has the right to represent the employees in collective bargaining. 29 U.S.C. § 159(a). Section 8(f), however, provides an exception for the building and construction industries. In these industries, an employer can enter into a § 8(f) collective bargaining agreement with a union that is not supported by a majority of the unit employees. 29 U.S.C. § 158(f). A union representative under a § 8(f) agreement has fewer statutory rights and obligations than does a union that is party to a § 9(a) agreement.

The central issue facing the ALJ and the NLRB in the underlying proceedings was whether the parties had entered into a § 9(a) agreement, in violation of the NLRB's requirement that the union have the support of a majority of the employees, or whether the parties entered into a § 8(f) agreement that was to be converted into a § 9(a) agreement if and when the CLA obtained the majority support of the

---

**1.** Although the CLA also filed an application for attorneys' fees and expenses, which was dismissed by the NLRB, it has not filed a petition for review in this court.

employees. At the heart of this dispute was the following "recognition clause" of the agreement:

> Subsequent to proof having been submitted to the Employer by the Union that the majority of his employees are members of the Union, the Employer recognizes the Union as the sole bargaining representative of his employees, exclusive of office help, superintendents and foremen having authority to hire and discharge or to effectively recommend such action, in all matters pertaining to their employment and working conditions.

(App. at 317). Hovey and the CLA argued to the ALJ that this language unambiguously created a § 8(f) agreement that was to be converted into a § 9(a) agreement only after the union demonstrated proof of majority support. The General Counsel asserted that the language created a § 9(a) agreement, because the phrase "[s]ubsequent to proof having been submitted," indicates not that proof will be submitted in the future, but that proof had already been submitted to the employer. The General Counsel's interpretation also relied on the present tense of the word "recognizes" in the recognition clause. (App. at 317). Both the ALJ and the NLRB ultimately agreed with the interpretation advanced by Hovey and the CLA, concluding that the parties had intended and entered into a § 8(f) agreement.

Also at issue was the lawfulness of the agreement's union security clause. This clause provided:

> For all employees who are in the unit and who are not full Union members on the effective date of this Agreement, their chosen status and their obligation to pay dues and fees shall begin on the thirtieth day after the effective date of this Agreement.... For all new employees who are hired into the unit during this Agreement's life, their chosen status, and their obligation to pay dues and fees, shall also begin on the thirtieth day after their date of hire.

(App. at 317). The NLRA requires employers with § 9(a) agreements to provide their employees with a 30–day grace period, within which an employee may choose how to meet his obligation to the union. Such an employer may not collect dues or fees until the expiration of the 30–day period. Employers in the construction or building industries with § 8(f) agreements, however, need only provide their employees with a 7 day grace period. Despite their apparent intention to enter into an § 8(f) agreement, Hovey and the CLA agreed to provide a 30–day period.

The lawfulness of the union security clause was brought into question by the decision of Hovey and the CLA to make the agreement effective retroactively. The terms of the CLA pension plan prevented Hovey from making a lump sum contribution on behalf of its employees to the pension plan for hours worked by the employees from April 1 to June 30 if the bargaining agreement became effective on August 13, 1997, the date it was executed. In order to ensure that Hovey could remit such a lump sum contribution to the CLA pension plan, the parties agreed to make the collective bargaining agreement effective retroactively as of April 1, 1997. After the agreement was executed Mr. Koppenol met with Hovey employees and made it clear to them that the only purpose of making the agreement retroactively effective was to ensure that Hovey could make the lump sum pension contributions. He specifically pointed out to the employees that they would have 30 days from August 13, 1997, the execution date, to determine how they would fulfill their obligations to the union.

The General Counsel argued that Hovey and the CLA committed an unfair labor practice in violation of the NLRA by not providing the Hovey employees with a full 30–day grace period, as required for § 9(a) agreements. *See* 29 U.S.C. § 158(a)(3). Because the union security clause ties the 30–day period to the effective date of the agreement, rather than the execution date, the employees were denied the grace period required by statute. Hovey and the CLA contended that the sole reason for making the agreement retroactive was to permit the lump sum pension contribution, and that the union security clause, therefore, did not violate the NLRA. The ALJ and the NLRB ultimately agreed with Hovey and the CLA, concluding that the union security clause did not violate the NLRA.[2]

Following the decisions of the ALJ and the NLRB in the underlying dispute, Hovey and the CLA filed separate applications for attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, and § 102.143 of the Board's Rules and Regulations. The matter was transferred back to the ALJ, who found that most of the General Counsel's positions in the underlying dispute were "sub-

stantially justified," including the General Counsel's positions with respect to the recognition clause and the union security clause. The ALJ, however, found that the General Counsel advanced one position at the hearing without substantial justification—that Hovey had provided unlawful assistance to the CLA. Nonetheless, based on the substantial justification for the General Counsel's other arguments, the ALJ dismissed the fee applications in a Supplemental Decision and Order dated August 27, 1999. The NLRB adopted the majority of the ALJ's opinion, but found it unnecessary to address the unlawful assistance claim. The NLRB noted that the ALJ's findings as to the unlawful assistance claim did not have any bearing on the result of the case, and dismissed the fee applications. (App. at 16). It is from this decision that Hovey now appeals.

## II.

The Equal Access to Justice Act permits parties prevailing over the United States in an adversarial hearing conducted by an administrative agency to recover attorneys' fees and costs, unless the position of the agency was "substantially justified." 5

**2.** In addition to these two main issues, other charges have been raised against Hovey in the course of the administrative proceedings. The original charge, filed on August 29, 1997 by the International Brotherhood of Electrical Workers, AFL–CIO, Local 131 ("IBEW"), alleged that Hovey violated § 8(a)(3) of the NLRA "by terminating [employee Greg Crawford] because of his Union affiliation and/or membership," and by committing "other acts" not specifically enumerated. (App. at 494). The amended charge, filed September 12, 1997 by IBEW, repeated the allegation regarding employee Crawford, and added an allegation that Jim Hovey threatened employees with discharge unless they joined the CLA. (App. at 495). On October 17, 1997, the IBEW filed a second amended charge, repeating the allegations above, and including

the following new allegations: 1) that Hovey entered into a § 9(a) agreement with the CLA without CLA majority support; 2) that Jeff Willi interrogated Hovey employees about union activities; and 3) that Tom Bartosek informed the Hovey employees that Greg Crawford was terminated because of union activities. Then, on October 28, the Regional Director of the NLRB issued a consolidated complaint, which incorporated the above allegations, as well as other charges of unfair labor practices against Hovey and the CLA. The parties subsequently settled several of the claims, including certain allegations concerning statements made to employees and the allegations regarding Greg Crawford. The remaining allegations proceeded to a formal hearing before the ALJ.

U.S.C. § 504(a)(1).[3] Fees and expenses are awarded unless the General Counsel can show that it was substantially justified, or that special circumstances exist that would make an award unjust. *Caremore, Inc. v. NLRB*, 150 F.3d 628, 629 (6th Cir.1998); *Wyandotte Sav. Bank v. NLRB*, 682 F.2d 119, 119 (6th Cir.1982). The NLRB bears the burden of proving that fees should not be awarded to an eligible applicant. *Derickson Co., Inc. v. NLRB*, 774 F.2d 229, 232 (8th Cir.1985); *Timms v. United States*, 742 F.2d 489, 492 (9th Cir. 1984). The General Counsel's position may be considered "substantially justified" only if it has a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

The initial decision whether to award fees under the EAJA is made by the adjudicative officer, but the agency makes the final administrative determination regarding fees. *See Lion Uniform v. NLRB*, 905 F.2d 120, 123 (6th Cir.1990). A dissatisfied party may then appeal to the federal court having jurisdiction to review the merits of the underlying dispute. *See id.* The federal court "may modify the agency's determination only if the agency's failure to award fees was unsupported by substantial evidence." *Id.* (citing 5 U.S.C. § 504(c)(2)). With these standards in mind, we now examine the General Counsel's position at the hearing.

Unlawful § 9(a) Agreement

[1] We first address the General Counsel's contention that Hovey unlawfully entered into a § 9(a) agreement with the CLA, which did not have the majority support of the employees at the time. Hovey argues that the language "[s]ubsequent to proof having been submitted" unambiguously indicates that proof will be submitted in the future. Thus, Hovey argues, the recognition clause clearly meant that Hovey was agreeing to recognize the CLA as the exclusive bargaining representative of the employees at some point in the future, when and if the CLA submitted proof of majority support. Although this is the interpretation that the NLRB eventually adopted in the underlying dispute, it was not the only possible interpretation of the recognition clause. Substantial evidence supported the ALJ's conclusion, adopted by the Board, that the General Counsel was "not unreasonable" in interpreting the language as § 9(a) language. (App. at 14, 16). The phrase "[s]ubsequent to proof having been submitted" could well indicate that proof already *had* been submitted, and subsequent to that event (i.e., now, on the date of execution) Hovey recognizes the CLA as the bargaining representative. Although, based on all of the evidence, the ALJ and the Board found an 8(f) contract, the ALJ could have found the General Counsel's position reasonable, given the inartful drafting of the recognition clause. The confusing wording of the first phrase of the recognition clause creates an ambiguity that could reasonably cause the General Counsel to believe a violation had taken place.[4]

---

3. Section 504(a)(1) provides: "An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was

substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought."

4. The parties argue vigorously over cases involving somewhat analogous language, including *Decorative Floors, Inc.*, 315 N.L.R.B. 188 (1994), *Golden West Elec.*, 307 N.L.R.B.

The General Counsel's interpretation was further supported by other evidence obtained by the NLRB prior to the issuance of the consolidated complaint. First, in the recognition clause, the verb "recognizes" is used in the present tense. If the drafters had meant to clearly convey an understanding that proof of majority support had not yet been submitted, and that Hovey would recognize the CLA only after such proof had been submitted, they could have used the phrase, "the Employer *will recognize* the Union...." The use of the present tense verb "recognizes" constituted substantial evidence to support the ALJ's finding.

The fact that the union security clause provided for a 30–day grace period, rather than a 7–day grace period, was further evidence to support the ALJ's findings. A § 9(a) agreement requires a 30–day grace period, while a § 8(f) agreement requires only 7 days. Of course, there is nothing to prevent the parties to an § 8(f) agreement from providing a grace period longer than 7 days. But given that the agreement happened to provide for a grace period exactly equal in length to the statutorily prescribed minimum for a § 9(a) agreement, the ALJ had another reason (although a relatively weak one) to find that the General Counsel's position was reasonable.

In addition to these clues from the language of the agreement, the NLRB obtained a sworn affidavit from CLA representative Koppenol suggesting that a § 9(a) agreement had been reached. In paragraph 8 of the affidavit, Koppenol stated that when he received a draft of the contract from the Hovey attorney, he "noticed that [the attorney] had included 9(a) recognition language, although we had talked about an 8(f) contract." (Koppenol Aff. at ¶ 8, App. 184).

Hovey contends that Koppenol's affidavit as a whole discloses that a § 8(f) agreement was reached. First, in paragraph 5, Koppenol stated that during negotiations, "[i]t was decided and agreed that we would start with an 8(f) pre-hire agreement, ... with the option of converting the contract to a 9(a) if CLA provided evidence of majority support." (Koppenol Aff. at ¶ 5, App. 183). Second, in paragraph 7, Koppenol stated that after a series of proposal exchanges, "we reached full agreement on the terms of a pre-hire 8(f) contract with Hovey, during a phone conference...." (Koppenol Aff. at ¶ 7, App. 184). Hovey argues that, in light of these statements in the affidavit, the General Counsel could not have reasonably concluded that a § 9(a) contract had been executed. What Hovey fails to appreciate, however, is where these statements stand in relation to the excerpt relied upon by the NLRB.

---

1494 (1992), and *NLRB v. Goodless Elec. Co.,* 124 F.3d 322 (1st Cir.1997). The court is not persuaded by analogies to any of these cases, because the language in the present case is distinguishable in meaningful ways from the language in each of the cited cases. In both *Decorative Floors* and *Golden West,* the recognition language clearly indicated that proof of majority support had already been submitted, and that the employer was, at the time of execution, recognizing the union as the bargaining representative. In contrast, the language in *Goodless* clearly indicated that proof of majority support had not yet been submitted, and that the employer would recognize the union, at some point in the future, if such proof were offered. The language there provided: "The Employer agrees that *if* a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer *will recognize* the Local Union...." *Goodless,* 124 F.3d at 325 (emphasis added). In the present case the inartful drafting of the recognition clause created an ambiguity as to whether Hovey was presently recognizing the CLA or whether it was merely agreeing to recognize it in the future.

Immediately *after* Koppenol made these statements, indicating that the parties had orally reached an agreement on the terms of an 8(f) contract, Koppenol states in paragraph 8: "On or about August 10, 1997, I received in the mail a full contract draft from [Hovey's attorney], which I read over and signed on August 11, 1997. I noticed that [Hovey's attorney] had included 9(a) recognition language, although we had talked about an 8(f) contract." Thus, Koppenol's earlier statements, relied upon by Hovey, show only that the parties had orally agreed to an 8(f) agreement, giving Koppenol a reason to be surprised when he received a written contract draft that included recognition language that he interpreted to be 9(a) language. Viewing the affidavit as a whole, and considering the cited excerpts in their proper order, Koppenol's statements provided the ALJ with further evidence to support the General Counsel's position that the parties had unlawfully executed a § 9(a) agreement. The language of the relevant provisions of the collective bargaining agreement, combined with Koppenol's statement, constituted substantial evidence to justify the conclusion reached by the ALJ and the Board, that the General Counsel's position was substantially justified. We therefore conclude that there was substantial evidence to support the denial of Hovey's application for fees and expenses.[5]

Hovey argues that the General Counsel's position could not have been "substantially justified" because the NLRB issued a complaint without proper investigation and because the NLRB's investigation violated basic tenets of the NLRA. Hovey argues that the NLRB latched on to a single misstatement of Koppenol, taken out of context, and proceeded to threaten a complaint against Hovey. But, as discussed above, the statement in Koppenol's affidavit, when taken in context, combined with the language of the contract, gave the General Counsel substantial evidence of a violation. Hovey argues that the investigation began prematurely, because an unfair labor practices charge had not been filed at the time the NLRB first requested a copy of the recognition clause language and Koppenol's affidavit. Hovey is simply mistaken about this. The Regional Director requested information on October 9, 1997. The first charge was filed on August 29, 1997. The amended charge, the first charge to specifically mention the CLA, was filed September 12, 1997. Although neither of these charges specifically alleged that Hovey had unlawfully entered into a § 9(a) agreement, they were sufficient to permit the Regional Director to undertake an investigation of Hovey's labor practices. As the Supreme

5. Hovey argues that the court should not consider Koppenol's affidavit in determining whether to award fees, because the affidavit was not part of the record before the ALJ in the underlying dispute. Under the EAJA, the determination of whether the agency's position was substantially justified is to be "based solely on the factual record made before the agency." 5 U.S.C. § 504(c)(2). Hovey also argues that the affidavit constitutes impermissible hearsay. These objections, however, have been waived by Hovey. The affidavit was attached as an exhibit to the General Counsel's motion to dismiss the fee application before the ALJ, and the ALJ relied upon the affidavit in dismissing the application. When Hovey filed exceptions to the ALJ's decision, it did not object to the ALJ's reliance on the affidavit on either of the grounds now argued. Under 29 U.S.C. § 160(e), "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Hovey does not allege any such extraordinary circumstances. Thus, Hovey's argument that the affidavit should not be considered in making the fee determination has been waived.

Court noted in *NLRB v. Fant Milling Co.*, 360 U.S. 301, 307–08, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959):

> A charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit. Its purpose is merely to set in motion the machinery of an inquiry.... To confine the Board in its inquiry and in framing the complaint to the specific matters alleged in the charge would reduce the statutory machinery to a vehicle for the vindication of private rights. This would be alien to the basic purpose of the Act.... Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has imposed upon it. There can be no justification for confining such an inquiry to the precise particularizations of a charge.

Thus, we conclude that once the Board's jurisdiction was invoked by the charges filed on August 29 and September 12, it acted within its powers in investigating the relationship between Hovey and the CLA, including the question of whether they had unlawfully entered into a § 9(a) agreement.

Unlawful Denial of Grace Period

■ The General Counsel also took the position that Hovey denied its employees the statutorily required grace period for determining how to meet their obligations to the union, in violation of 29 U.S.C. § 158(a)(3). The union security clause at issue here provided a grace period of 30 days, but provided that the period would begin running from the effective date of the agreement. The agreement was made retroactively effective, as of April 1, 1997. Thus, the 30–day period expired, under the express terms of the agreement, at the end of April, before the collective bargaining agreement had even been signed. The NLRB has previously found union security clauses to be unlawful where the retroactivity of the agreement has the effect of denying employees the required grace period. *See Standard Molding Corp.*, 137 N.L.R.B. 1515, 1516 (1962). Where the agreement, on its face, unambiguously provides a 30–day grace period that is tied to the effective date, but also contains a provision making it retroactively effective, the contract "because of its retroactivity, fails to accord nonmember incumbent employees the required 30–day grace period following the date of execution." *Id.* Thus, the agreement is unlawful, despite the fact that extrinsic evidence might establish that employees were actually given 30 days from the date of execution. *See id.* (finding it unnecessary to examine extrinsic evidence in order to determine whether employees were denied the required grace period because the contract was unambiguous). The evidence indicating that Koppenol orally informed the employees that they had 30 days from the date of execution to decide how to fulfill their obligations is therefore irrelevant. The contract unambiguously denied employees the required grace period. The contract itself was substantial evidence to support the ALJ's finding that the General Counsel was substantially justified as to the union security clause.

Hovey argues that footnote 6 of *Keystone Coat, Apron & Towel Supply Co.*, 121 N.L.R.B. 880, 885 (1958), *overruled on other grounds as stated in California Saw & Knife Works*, 1992 NLRB LEXIS 669 (1992), stands for the proposition that "when an agreement's effective date is retroactive on its face, ... the date the agreement was executed by the parties will be substituted for the effective date for purposes of calculating a union security clause grace period." (Pet. Brief at 44). Hovey's

contention is misguided. Footnote 6 of *Keystone* reads: "Where the effective date of the agreement is made retroactive, the execution date shall be substituted for the effective date." *Keystone*, 121 N.L.R.B. at 885 n. 6. Hovey mischaracterizes this footnote as a rule of contractual interpretation. In actuality, the footnote is suggested model language for the drafters of union security clauses. The footnote is appended to a section of the Board's *Keystone* opinion that reads:

> [I]n order to assist any parties who might encounter difficulty in drafting, the following model union-security clause, deemed by the Board to be the maximum permissible in conformity with the requirements of the Act, is set forth as a guide:

> It shall be a condition of employment that all employees of the Employer covered by this agreement who are members of the Union in good standing on the effective date of this agreement shall remain members in good standing and those who are not members on the effective date of this agreement shall, on the thirtieth day [or such longer period as the parties may specify] following the effective date of this agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this agreement and hired on or after its effective date shall, on the thirtieth day following the beginning of such employment [or such longer period as the parties may specify] become and remain members in good standing in the Union .[FN6].

Viewing the footnote in its context, it is apparent that it is meant as an instruction to drafters to substitute the words "execution date" for the words "effective date" in the above provision, when the parties choose to make the agreement retroactive.

The footnote does not mean that where parties to a retroactive agreement neglect to make such a substitution, the court should read the substitution into the contract anyway, as a matter of contractual interpretation. Because the union security clause in this case provided for a 30–day period tied to the effective date, despite the parties' agreement to make the contract retroactively effective, the Board's decision to dismiss Hovey's fee application was supported by substantial evidence.

Unlawful Assistance Allegations

In Section D of his Supplemental Decision and Recommended Order, the ALJ concluded that the General Counsel's position was not substantially justified with respect to allegations of unlawful assistance. Nonetheless, the ALJ recommended dismissal of Hovey's application for fees, in light of his conclusion that the General Counsel's other arguments were substantially justified. The NLRB agreed with the ALJ that the General Counsel had substantial justification for arguing that Hovey had unlawfully entered into a § 9(a) agreement and that Hovey denied its employees the required grace period. The Board, however, found it unnecessary to pass on the ALJ's finding that the General Counsel's position on unlawful assistance was not substantially justified, since that finding had "no bearing on the result in this case." (App. at 16). Hovey now contends that it is entitled to fees with respect to the unlawful assistance issue, even if the General Counsel's arguments were otherwise substantially justified, because the unlawful assistance allegations were wholly independent of the other allegations. But fee determinations under the EAJA are to be made by examining the case as "an inclusive whole." *See Commissioner, INS v. Jean*, 496 U.S. 154, 162, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Although the General Counsel's position

with respect to certain individual matters may have been more or less justified, the General Counsel's overall position in this case was substantially justified, as discussed above. *See id.* at 161–62, 110 S.Ct. 2316. Thus, the Board's dismissal of Hovey's fee application was reasonable, despite the ALJ's findings as to the unlawful assistance claims.

### III.

For the foregoing reasons, the Supplemental Decision and Order of the NLRB is affirmed.